# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SAFT AMERICA, INC., | ) |
|     Plaintiff, | ) CIVIL ACTION NO. 21CV35 |
| v. | ) |
| PRECISION DRAWN METALS, INC., | ) |
|     Defendants. | ) |

**ACUITY, A MUTUAL INSURANCE COMPANY'S CROSS-CLAIM AND COUNTERCLAIM FOR DECLARATORY JUDGMENT**

NOW COMES, Intervenor Defendant, Acuity, A Mutual Insurance Company ("Acuity"), by its attorneys, Simpson & Deardorff, S.C., and as and for its Cross-Claim and Counterclaim against all parties in the above-captioned action, alleges as follows:

## PRELIMINARY ALLEGATIONS

1. Acuity is a domestic insurance company operating under the laws of the State of Wisconsin with its principal place of business located at 2800 South Taylor Drive, Sheboygan, Wisconsin, 53082.

2. Defendant, Precision Drawn Metals, Inc. ("Precision"), is a Wisconsin corporation with its principal place of business located at 1345 Plainfield Avenue, Janesville, Wisconsin.

3. Acuity repeats, realleges, and incorporates by reference as though fully set forth herein the allegations as set forth by the plaintiff in this lawsuit, but denies knowledge or information sufficient to form a belief as to the truth of such allegations and further denies any liability of, or insurance coverage from, Acuity for any allegations and damages claimed in this lawsuit.

4. This is a claim for declaratory judgment to determine a controversy between the parties; Acuity seeks declaratory relief concerning insurance coverage for the breach of contract claim as alleged by the plaintiff in this lawsuit.

5. As more fully described below, Acuity's policy does not provide insurance coverage for the plaintiff's claim.

6. A genuine, actual, and justiciable controversy exists between Acuity and Precision regarding insurance coverage for the plaintiff's claim.

7. The United States District Court for the Western District of Wisconsin has supplemental jurisdiction over issues relating to insurance coverage under 28 U.S.C. § 1367.

8. The United States District Court for the Western District of Wisconsin may grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## INSURANCE CONTRACT

9. Acuity issued a commercial general liability policy to Precision Drawn Metals Inc. ("Precision") under Policy No. Z61226 with relevant policy periods extending from 1/1/18 through 1/1/21.

10. The Acuity policy was issued subject to all of its policy terms, conditions, grants, exclusions, and limitations, including limitations of monetary coverage, which are incorporated as though fully set forth herein at length.

11. Pursuant to the Commercial General Liability Coverage Form, the Policy provides an initial grant of coverage, in relevant part, as follows:

>  SECTION I—COVERAGES
> 
>  COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY
> 
>  **1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of *bodily injury* or *property damage* to which this insurance applies. We will have the right and duty to defend the insured against any *suit* seeking those damages. However, we will have no duty to defend the insured against any *suit* seeking damages for *bodily injury* or *property damage* to which this insurance does not apply…

    **b.** This insurance applies to *bodily injury* or *property damage* only if:

        (1) The *bodily injury* or *property damage* is caused by *occurrence* that takes place in the *coverage territory;*

        (2) The *bodily injury* or *property damage* occurs during the policy period;…

(Acuity Policy 2018-2020 – CGL Form at 1 of 15; 2020-2021 – CGL Form at 2 of 16.)

12.    The Acuity policy contains the following, or substantially similar, relevant and potentially applicable exclusions:

**2. Exclusions**

This insurance does not apply to:

…

**b. Contractual Liability**

*Bodily injury* or *property damage* for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an *insured contract*, provided the *bodily injury* or *property damage* occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an *insured contract*, reasonable attorney fees and necessary litigation expenses incurred by or for a party

3

other than an insured are deemed to be damages because of *bodily injury* or *property damage* provided:

    a. Liability to such party for, or for the cost of, that party's defense has also been assumed in the same *insured contract*; and

    b. Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

. . .

**k. Damage to Your Product**

*Property damage* to *your product* arising out of it or any part of it.

**l. Damage to Your Work**

*Property damage* to *your work* arising out of it or any part of it and included in the *products-completed operations hazard.*

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage to Impaired Property or Property Not Physically Injured**

*Property damage* to *impaired property* or property that has not been physically injured, arising out of:

    (1) A defect, deficiency, inadequacy or dangerous condition in *your product* or *your work*; or

    (2) A delay or failure by you or anyone acting on your behalf of perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to *your product* or *your work* after it has been put to its intended use.

**n. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) *Your product;*

(2) *Your work;* or

(3) *Impaired property;*

If such product, work or property is withdrawn or recalled from the market or from use by any organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

(Acuity Policy 2018-2020 – CGL Form at 2, 4-5 of 15; 2020-2021 – CGL Form at 3, 5-6 of 16.)

13. The Policy also contains the following relevant definitions:

   **8.** *"Impaired property"* means tangible property, other than *your product* or *your work*, that cannot be used or is less useful because:

   **a.** It incorporates *your product* or *your work* that is known or thought to be defective, deficient, inadequate or dangerous; or

   **b.** You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of *your product* or *your work* or your fulfilling the terms of the contract or agreement.

   **9.** "*Insured contract*" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an insured contract;

(Acuity Policy 2018-2020 – CGL Form at 13 of 15; 2020-2021 – CGL Form at 14 of 16.)

13. *"Occurrence"* means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

16. "*Products-completed operations hazard*:"

    a. Includes all *bodily injury* and *property damage* occurring away from premises you own or rent and arising out of *your product* or *your work* except:
    (1) Products that are still in your physical possession; or

    (2) Work that has not yet been completed or abandoned. However, *your work* will be deemed completed at the earliest of the following times:

    (a) When all of the work called for in your contract has been completed.

    (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    b. Does not include *bodily injury* or *property damage* arising out of:

    (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the *loading* or *unloading* of that vehicle by any insured;

    (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

        (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

(Acuity Policy 2018-2020 – CGL Form at 14-15 of 15; 2020-2021 – CGL Form at 15-16 of 16.)

  **17.** *"Property damage"* means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the *occurrence* that caused it. …

  **21.** *"Your product:"*

    **a.** Means:

      (1) Any goods or products other than real property, manufactured, sold, handled, distributed or disposed of by:

        (a) You;

        (b) Others trading under your name; or

        (c) A person or organization whose business or assets you have acquired; and

      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.** Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of *your product*; and

      (2) The providing of or failure to provide warnings or instructions.

      …

22. *"Your work:"*

   a. Means:

   (1) Work or operations performed by you or on your behalf; and

   (2) Materials, parts or equipment furnished in connection with such work or operations.

   b. Includes:

   (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of *your work*; and

   (2) The providing of or failure to provide warnings or instructions.

(Acuity Policy 2018-2020 – CGL Form at 15 of 15; CG-7301(11-14) at 2 of 8; 2020-2021 – CGL Form at 16 of 16; CG-7301 (11-14) at 2 of 8.)

14. The Policy contains the following Product Recall Endorsement in the Commercial General Coverage Form:

> **PRODUCT RECALL COVERAGE**
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
>
> The following provisions apply only to the coverage provided by this endorsement:
>
> **1.** The following is added to Section I - Coverages:
>
> **PRODUCT RECALL**
>
> **1. Insuring Agreement**
>
> We will pay for *product recall expense* incurred by you because of a *recall incident* that takes place in the *coverage territory*.
>
> The amount we will pay you is limited as described in Section III - Limits of Insurance.
>
> **2. Exclusions**
>
> This insurance does not apply to:

     **a.** *Product recall expenses* you incur because:

        (1) The product is similar to; or

        (2) The product is the same trade or brand name as, but of different batches from;

    a product which has been or is being recalled or which has been determined to be likely to cause a *recall incident* under this endorsement.

     **b.** Loss of customer faith or approval or any costs incurred to regain customer approval;

     **c.** *Product recall expense* arising out of a pre-existing condition or situation which is reasonably likely to cause a recall of *your products* if you, your *executive officers* or any of your *employees* had knowledge thereof prior to the beginning of this policy period.

     **d.** The cost or expense to repair, decontaminate or otherwise treat recalled products so as to render them marketable;

     **e.** *Product recall expenses* arising out of the deterioration, decomposition or transformation of chemical structure unless as a result of error or omission in the manufacture of the products; or

     **f.** Any *bodily injury, property damage* or *personal and advertising injury* arising out of *your products.*

  **2.** Section II - Who Is an Insured does not apply to the coverage provided by this endorsement.

(Product Recall Coverage CG-7170 (7-98).)

    15.    The Policy contains the following Commercial Excess Liability Coverage:

        **1.**    **Insuring Agreement**

        **a.**    We will pay those sums, in excess of the amount payable under the terms of any *underlying insurance*, that the insured becomes legally obligated to pay as damages because of *injury* or damage to which this insurance applies, provided that the *underlying insurance* also applies, or would apply but for the exhaustion of its applicable Limits of Insurance. . . .

(Acuity Policy – CEL Form at 2 of 7.)

16. The Commercial General Liability Coverage Form is listed as an "underlying insurance" to which the Commercial Excess Liability Coverage Form applies. (Acuity Policy, Commercial Excess Liability Coverage Form, Declarations.)

17. The Commercial Excess Liability Form is subject to the same terms, conditions, agreements, exclusions and definitions as the Commercial General Liability Coverage Form, as stated above, except with any provisions to the contrary.

## COUNT I – NO INITIAL GRANT OF COVERAGE

18. Acuity restates and realleges all preceding paragraphs of this Cross-Claim and Counterclaim.

19. The allegations of the plaintiff in this lawsuit fail to trigger an initial grant of coverage under the Acuity policy.

20. The allegations against Precision fail to allege "property damage" caused by an "occurrence" as such terms are defined by the Acuity policy and interpreted by Wisconsin law.

21. To the extent the plaintiff's allegations in this lawsuit trigger an initial grant of coverage, Acuity has no duty to defend or indemnify Precision to the extent that facts revealed during discovery or trial demonstrate that there is no initial grant of coverage under the Policy.

## COUNT II – POLICY EXCLUSIONS PRECLUDE COVERAGE

22. Acuity restates and realleges all preceding paragraphs of this Cross-Claim and Counterclaim.

23. Acuity has no duty to defend or indemnify Precision because the plaintiff alleges damages owed by Precision as a result of contractual liability.

24. Acuity has no duty to defend or indemnify Precision because any "property damage," if it exists, arises out of damage to Precision's "product," as those terms are defined by Acuity's policy and interpreted under Wisconsin law.

25. Acuity has no duty to defend or indemnify Precision because any "property damage," if it exists, arises out of damage to Precision's "work," as those terms are defined by Acuity's policy and interpreted under Wisconsin law.

26. Acuity has no duty to defend or indemnify Precision because any "property damage" to impaired property or property not physically injured, if it exists, arises out of defects, deficiencies, inadequacies, or dangers in Precision's "product" or "work."

27. Acuity has no duty to defend or indemnify Precision because any "property damage" to impaired property or property not physically injured, if it exists, arises out of a delay or failure by Precision to perform a contract or agreement in accordance with its terms.

28. Acuity has no duty to defend or indemnify Precision to the extent the plaintiff alleges any damages associated with the costs of replacing and repairing Precision's "product."

29. Acuity's Product Recall Coverage Endorsement does not apply to provide third party coverage for the allegations in this litigation.

30. No "recall incident" as that term is defined by the Product Recall Coverage Endorsement serves as a basis for any claim by Precision that is associated with Precision's costs of withdrawing, recalling, inspecting, removing, testing, investigating, disposing of, or scrapping Precision's "product."

31. Acuity's Commercial Excess Liability Coverage Form does not afford coverage because the underlying policy parts do not apply and/or coverage is otherwise barred by the policy's exclusions; said Form is subject to the same terms, conditions, agreements, exclusions

and definitions as the underlying insurance except with respect to any provisions to the contrary, not applicable here.

32. Acuity reserves the right to amend its pleadings should discovery or trial testimony reveal the precise nature of the claims made which may give rise to other applicable bases for non-coverage.

WHEREFORE, Intervenor Defendant, Acuity, A Mutual Insurance Company, demands judgment that the Acuity insurance contract relevant at all times material does not afford insurance coverage for the allegations as contained therein, and therefore, Acuity has no duty to defend or indemnify Precision in this federal action.

Dated this 21st day of April, 2021

Respectfully submitted,

*/s/ Christine M. Rice*
Christine M. Rice (SBN: 1055158)
Brittany L. Van Roo (SBN: 1080096)
Aaron P. Benz (SBN: 1105344)
Attorneys for Acuity, A Mutual Insurance Company
SIMPSON & DEARDORFF, S.C.
311 East Chicago Street, Suite 410
Milwaukee, WI 53202-5896
P: (414) 273-8550
F: (414) 273-8551
Email: rice@simpsondeardorff.com
vanroo@simpsondeardorff.com
benz@simpsondeardorff.com

s:\active files\cmr\saft\pleadings.client\motion to intervene & bifurcate\cross-counter.final.docx