IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SAFT AMERICA, INC.

                    Plaintiff,

v.

PRECISION DRAWN METALS, INC. and ACUITY,      OPINION and ORDER

                    Defendants,                              21-cv-35-jdp

v.

THOMAS STEEL STRIP CORPORATION,

                    Third-Party Defendant.

---

Plaintiff Saft America, Inc. is suing defendant Precision Drawn Metals, Inc. for supplying defective steel cans for use in Saft's battery cells. Precision in turn alleges that its own steel supplier, third-party defendant Thomas Steel Strip Corporation, negligently changed its manufacturing process, resulting in defective steel. Dkt. 24.

Thomas Steel moves to dismiss Precision's amended third-party complaint under Federal Rule of Civil Procedure 12(b)(6), contending that Precision's negligence claim is barred by Wisconsin's economic loss doctrine. The court concludes that Precision may not assert a negligence claim, but it may amend its complaint to assert a claim for breach of contract instead.

ANALYSIS

**A. Thomas Steel's motion to dismiss**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. To state a claim upon which relief can be granted, a complaint need only provide a "short and

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Here, the economic loss doctrine bars Precision's negligence claim. That is the only claim that Precision raised in its complaint, so Precision has failed to state a claim upon which relief may be granted.

The economic loss doctrine "preclude[s] contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contract relationship." *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 23, 270 Wis. 2d 146, 677 N.W.2d 233. Economic losses are defined as "damages resulting from inadequate value because the product is inferior and does not work for the general purposes for which it was manufactured and sold." *Daanen & Janssen v. Cedarapids, Inc.*, 216 Wis. 2d 395, 401, 573 N.W.2d 842 (1998). The doctrine prevents contracting parties from suing in tort to gain benefits that were not part of their bargain, *Tietsworth*, 2004 WI 32, ¶ 26, and from circumventing the statutory scheme of commercial rights and remedies provided by the Uniform Commercial Code, *Ins. Co. of N. Am. v. Cease Elec. Inc.*, 2004 WI 139 ¶ 32, 276 Wis. 2d 361, 688 N.W.2d 462.

In this case, there is no dispute that Precision and Thomas Steel are contracting parties. Precision alleges that Thomas Steel had been acting as Precision's steel supplier "for many years." Dkt. 24, ¶ 3. And Precision's allegations show that it is seeking compensation for economic loss. Precision alleges that it suffered damages because Thomas Steel "negligently provided softer and inconsistent source material; failed to notify [Precision] of changes in the source materials being provided; and failed to ensure the source material being provided [was] of consistent and appropriate quality." Dkt. 24, ¶¶ 17–18. In other words, Precision alleges that the product it received from Thomas Steel "does not work for the general purposes for which was manufactured and sold," namely, the fabrication of steel cans for eventual use in

battery cells. *Daanen*, 573 N.W.2d at 845. So the economic loss doctrine bars Precision's negligence claim.

Precision resists this conclusion on three grounds, two of which rest on *Cease Electric*, 2004 WI 139. First, Precision says that its negligence claim is "based upon the services it expected [Thomas Steel] to provide, i.e. determining and providing the most appropriate source materials of a certain structure/hardness as agreed upon by the parties and not making any changes to the processing of such materials without [Precision]'s knowledge or consent." Dkt. 39, at 3. *Cease Electric* recognized an exception to the economic loss doctrine for service contracts, 2004 WI 139, at ¶ 2, and it concluded that an agreement to install a new ventilation system was a service contract, *id.* at ¶ 18. But Precision and Thomas Steel had a contract for goods, not services. As Precision acknowledges in its complaint, Thomas Steel was its "materials supplier." Dkt. 24, ¶ 13.

Precision's assertion that Thomas Steel provided the "service" of "providing the most appropriate source materials" isn't persuasive. If the court were to accept Precision's view, it would convert nearly every contract for goods into one for services.

Second, Precision relies on *Cease Electric* for the proposition that the economic loss doctrine doesn't apply to "informal" contracts such as the ones between it and Thomas Steel that were based on purchase orders rather than a written agreement that expressly allocated risks, limited remedies, or provided warranties. But *Cease Electric* doesn't include an exception to the economic loss doctrine for "informal" contracts. In concluding that the doctrine didn't apply to service contracts, the court noted that service contracts are often less formal than contracts for goods. 2004 WI 139, at ¶¶ 37, 43–44. But the court's recognition of an exception for service contracts rested primarily on the absence of U.C.C. protections for such contracts.

3

*See id.* at ¶ 36 ("Given the inapplicability of the U.C.C. to service contracts, we decline to extend the economic loss doctrine in this case."). The U.C.C. *does* apply to contracts for goods, regardless how formal the contract is, so *Cease Electric* doesn't support Precision's argument. In fact, the supreme court noted that "the existence of these rights and remedies [under the U.C.C.] serves as one of the critical rationales underlying the economic loss doctrine." *Id*. at ¶ 32.

Precision cites no cases decided after *Cease Electric* that have adopted an exception to the economic loss doctrine for contracts based on purchase orders. Rather, other courts have applied the economic loss doctrine to tort claims even when a purchase order was the only contract at issue. *See, e.g.*, *Taizhou Yuanda Inv. Grp. Co. v. Z Outdoor Living, LLC*, No. 19-cv-875-jdp, 2020 WL 2849966, at *6 (W.D. Wis. June 2, 2020); *Emirat AG v. High Point Printing LLC*, 248 F. Supp. 3d 911, 938 (E.D. Wis. 2017); *Schrieber Foods, Inc. v. Lei Wang*, No. 08-C-962, 2010 WL 4683726 (E.D. Wis. Nov. 10, 2010). In any event, this court doesn't have the authority to create a new exception to the economic loss doctrine that hasn't been recognized by the Wisconsin Supreme Court. *See Guar. Bank v. Chubb Corp.*, 538 F.3d 587, 590 (7th Cir. 2008) ("We are bound by the Wisconsin Supreme Court's interpretation of Wisconsin law, whether we think it right or wrong.").

Third, Precision argues that the economic loss doctrine shouldn't apply because Precision's claim "is primarily related to [Thomas Steel]'s negligent conduct which [Precision] seeks to deter in the future." Dkt. 39, at 5. But a plaintiff cannot avoid the economic loss doctrine simply by asserting that the conduct at issue violates tort law. As discussed above, the entire purpose of the doctrine is to prevent parties from relying on tort law to recover for

economic losses. That is what Precision is trying to do in this case, so the court will grant Thomas Steel's motion to dismiss.

**B. Precision's motion for leave to amend its third-party complaint**

In the event that the court dismisses its negligence claim, Precision asks for leave to amend its complaint to add a contract claim. Federal Rule of Civil Procedure 15(a)(2) provides that the court "should freely give leave when justice so requires." Reasons to deny leave include undue delay, prejudice to the non-moving party, and futility. *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004). Delay alone is ordinarily not sufficient to deny leave, however. *Id.* It must be paired with paired with some other reason, typically prejudice. *Id.*

Thomas Steel opposes amendment on two grounds. First, Thomas Steel says that amendment is futile because Precision's proposed amended complaint includes the same negligence claim. That claim is futile, but the new contract claim isn't, so Precision's failure to omit the negligence claim from the proposed amended complaint isn't a sufficient reason to deny leave to amend.

Second, Thomas Steel argues that it will be prejudiced if Precision is granted leave to add a contract claim because discovery has already been proceeding for several months. But there is likely significant overlap on the discovery that would be relevant to the contract and negligence claims. In fact, Thomas Steel does not point to any differences between the discovery needed for the two claims. The court discerns no unfair prejudice to Thomas Steel, and Thomas Steel hasn't identified any, so the court will give Precision leave to amend its complaint.

ORDER

IT IS ORDERED that:

1. Third-party defendant Thomas Steel Strip Corporation's motion to dismiss defendant Precision Drawn Metals, Inc.'s amended third-party complaint, Dkt. 36, is GRANTED.

2. Precision is GRANTED leave to amend its complaint to substitute a contract claim for a negligence claim. Precision may have until October 25, 2021, to file its amended complaint.

Entered October 18, 2021.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge